The Burger Brewing Co. et al., Appellees, v. Thomas et al.; Wholesale Beer Association of Ohio, Appellant. The Burger Brewing Co. et al., Appellees, v. Thomas et al.; Liquor Control Commission, Appellant.

[Cite as Burger Brewing Co. v. Thomas (1975), 42 Ohio St. 2d 377.]

(Nos. 74-477 and 74-492—Decided June 4. 1975.)

378

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. R. Brooke Alloway, Mr. John J. Duffey, Mr. James F. DeLeone* and *Mr. Robert N. Krier*, for appellees.

*Mr. William J. Brown*, attorney general, *Mr. Norman P. Solze, Messrs. Fontana, Ward, Kaps & Perry* and *Mr. Charles T. Kaps*, for appellants.

STEPHENSON, J. Basically, the propositions of law advanced herein present two pivotal questions as to the validity of the regulation. The first is whether the General Assembly has delegated authority to the commission authorizing adoption of the regulation. The second is whether, for a number of reasons, the regulation is unreasonable. We need reach and consider the latter only if the commission possesses the basic power to adopt the regulation.

We need not stop in the disposition of this appeal to examine the power of the General Assembly to absolutely control the liquor industry as a matter of social policy, and, in the exercise of the police power of the state, to enact regulatory statutes without regard to traditional constitu-

tional limitations, including price regulations in the liquor industry. That such authority exists was settled by this court in *Pompei Winery* v. *Board of Liquor Control* (1957), 167 Ohio St. 61. See, also, the subsequent decision of the United States Supreme Court in *Joseph E. Seagram & Sons* v. *Hostetter* (1966), 348 U. S. 35; and Annotation, Comment Note—Extent of State Regulatory Power Under Twenty-first Amendment, 34 L. Ed. 2d 805.

The focus here is not upon the power of the General Assembly itself to regulate in the area reached by the regulation. Rather, it is whether the General Assembly, in the statutory scheme of liquor regulation it has adopted, has manifested an intention to regulate in the area reached by this regulation and delegated to the commission the power of implementation.

The Department of Liquor Control, of which the Liquor Control Commission, by definition in R. C. 4301.02, is a part, is an administrative agency of the state of Ohio. *State, ex rel. Williams,* v. *Glander* (1947), 148 Ohio St. 188. As such, it has only such authority, either express or implied, as conferred upon it by the General Assembly. Such authority that is conferred upon an administrative agency by the General Assembly cannot be extended by the agency. *Davis* v. *State, ex rel. Kennedy* (1933), 127 Ohio St. 261.

The nature, scope and effect of the regulation has been variously described. The trial court and the appellants, in substance, adopt the view that it is one which regulates or controls the manner in which price changes may be made, but does not regulate the price. The Court of Appeals found the regulation to be a ''price-fixing'' effort. However the regulation may be best described, it is at least a price affecting regulation of substantial economic impact upon the appellees' pricing and marketing systems. Thus, in *Burger, supra* (34 Ohio St. 2d 93), this court stated, at page 98:

''Regulation LCc-1-73, on its face, specifically regulates the plaintiffs' businesses—their pricing and marketing systems. There is no aspect of their businesses that is more crucial to success than pricing and marketing. Further, evidence was presented that the regulation controlled existing business practices, limited further price changes,

resulted in economic loss, and affected business operations.''

The broad scheme of statutory regulation of the liquor industry is embodied, and in considerable detail, in R. C. Chapters 4301 and 4303. In these chapters, the General Assembly has essentially structured the Liquor Control Commission as that part of the Department of Liquor Control whose function it is to implement by rule the objectives of the two chapters and to confer executive and administrative responsibilities upon the remainder of the department. R. C. 4301.05. Additionally, the General Assembly has legislatively manifested its intention that both the commission and the department were to have powers by implication in addition to those expressly granted in the two chapters. R. C. 4301.05 and R. C. 4301.10(A) (8). Hence, whether a specific statute authorizes the regulation is not determinative. *American Wine & Beverage Co.* v. *Board of Liquor Control* (1951), 66 Ohio Law Abs. 161.

Appellants assert that a number of statutes in the two chapters, singularly or in combination, authorize the commission to adopt the regulation. The first is R. C. 4301.03 which provides with respect to the rule making authority of the commission:

''The Liquor Control Commission may adopt and promulgate, repeal, rescind, and amend, in the manner required by this section, rules, regulations, standards, requirements, and orders necessary to carry out Chapters 4301 and 4303 of the Revised Code. * * * The rules and regulations of the Liquor Control Commission may include the following: * * *.''

The statute then enumerates nine specific areas of regulation, none of which, however, confers any express or specific authority in the area of pricing, at any level, of any segment of the liquor industry.

Appellants also rely on R. C. 4301.10, which provides, in part:

''(A) The Department of Liquor Control shall:

''(1) Control the traffic in beer and intoxicating liquor in this state, including the manufacture, importation, and sale thereof;''

It is evident from this, and the additional sub-sections of the statute, that no express authority is granted to adopt regulations in the area of pricing of the malt beverage industry.

Although the commission relied only on R. C. 4301.03 and 4301.10 in the promulgation of the regulation, appellants assert authority for its adoption also appears in R. C. 4303.02 and 4303.06. The former authorizes the issuance of a permit for the manufacture and sale of malt beverages, and is designated "A-1." The latter, basically, authorizes the issuance of a wholesaler permit for the sale of malt beverages for home use and to retail permit holders, and is designated "B-1." Both sections contain a provision that the permits shall be issued "under such regulations as are promulgated by the Department of Liquor Control."

Appellees urge such sections should not be considered as a grant of authority to the commission for the reason that such sections were intended to confer authority only upon the Director of Liquor Control. Such argument fails to give heed to the rule authority of the commission "to carry out Chapters 4301 *and 4303*." (Emphasis added.) The two statutes evidence the intent of the General Assembly that such permits were subject to regulations. Hence, they are properly considered here.

Whether considered as a separate grant of regulatory power to the commission or as a regulatory power already conferred in R. C. 4301.03, it is self evident that there is no specific reference to pricing.

The Wholesale Beer Association additionally asserts authority for the regulation may be found in the following part of R. C. 4301.24:

"No manufacturer shall aid or assist the holder of any permit for sale at wholesale and no manufacturer or wholesale distributor shall aid or assist the holder of any permit for sale at retail by gift or loan of any money or property of any description or other valuable thing, or by giving premiums or rebates. No holder of any such permit shall accept the same, provided that the manufacturer or wholesale distributor may furnish to a retail permittee the inside signs or advertising and the tap signs or devices

authorized by divisions (F) and (G) of Section 4301.22 of the Revised Code.

"No manufacturer shall have any financial interest directly or indirectly by stock ownership, or through interlocking directors in a corporation, or otherwise, in the establishment, maintenance, or promotion in the business of any wholesale distributor."

As originally enacted in 115 Ohio Laws, Pt. 2, 140 (G. C. 6064.24), the statutory prohibitions were upon the manufacturer and the wholesaler with respect to retail permit holders. The Ohio Attorney General early interpreted the purpose of the statute to prevent pre-prohibition abuses resulting from control by business connections and alliances of retail outlets by wholesalers or manufacturers. Opinions of Attorney General (1934), 1079, No. 2945, and 1717, No. 3600. Such statutes are in general use and commonly referred to as "tied house" statutes, their adoptions being for the purpose suggested by the Attorney General. 48 Corpus Juris Secundum 328, Section 197.

Presumedly, when the statute was amended in 1939 (118 Ohio Laws 641), to place like restrictions on manufacturers with respect to wholesale permit holders, it was to effect the legislative policy of the independence for the public good of such wholesaler permit holders. There is nothing in the record to support a conclusion that the use of special sales, directly or indirectly, leads to control of any permit holder by another.

Appellant's attempt to relate the regulation to the statute by suggesting that differences in price by a brewery to different wholesalers constitutes gifts, premiums, or rebates is unpersuasive. While appellant does not articulate what precise evil such price differentials create, if it is the "unfair competition" in the preamble of the regulation, that is negated by R. C. 4301.241, which mandates that a brewery shall have only one wholesaler who may sell at wholesale in a specific given geographical area and no other. Additionally, the record discloses that prices to a wholesaler in a given market are set only for the purpose of remaining competitive in such market.

We note that the commission did not rely on R. C.

4301.24 in the promulgation of the regulation, nor have they joined in such contention in this court. We hold that R. C. 4301.24 does not specifically, or by implication, authorize the regulation.

From the above, it is evident that the General Assembly has not specifically expressed an intention that the commission have authority in the area of pricing in the liquor industry generally or in the malt beverage industry specifically. The question remains whether it has done so by implication. As to whether a particular power has been delegated from the General Assembly to an administrative agency, the following statement in *State, ex rel. A. Bentley & Sons Co.,* v. *Pierce* (1917), 96 Ohio St. 44, 47, is pertinent:

"Such grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as may be reasonably necessary to make the express power effective. In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, it follows, as a matter of course, that there can be no implied grant. In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved not in favor of the grant but against it. It is one of the reserved powers that the legislative body no doubt had, but failed to delegate to the administrative board or body in question."

We deem it significant that the General Assembly deemed it necessary to enact R. C. 4301.041 and 4301.13. In the former, the commission was specifically given authority to regulate minimum percentage mark-up for malt beverages at retail "for off-premises consumption only." In the latter, the commission was authorized to determine and fix the minimum mark-up at wholesale or retail, or both, for bottled wine and, also, fix minimum prices, both wholesale and retail, of bottled wine distributed or sold in Ohio.

The adoption of those statutes is indicative, at least,

that the General Assembly did not deem such regulatory authority within the implied powers previously granted. Appellants urge, however, that we distinguish between the type of pricing authority therein granted and the lesser type of price regulation embodied in the commission's rule. While, no doubt the regulation of price by minimum markups is of greater impact upon pricing, the regulation here, even under appellants' characterization, also has its impact upon appellees' pricing system even if of lesser degree.

In *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, 342, the following is stated:

"Section 1, Article II of the state Constitution provides in part:

" 'The legislative power of the state shall be vested in a General Assembly * * *.'

"It is firmly established that the General Assembly cannot delegate its legislative power and that any attempt so to do is unconstitutional. See *Cincinnati, W. & Z. Rd. Co.* v. *Commrs. of Clinton County*, 1 Ohio St. 77; *State, ex rel. Allison*, v. *Garver*, 66 Ohio St. 555, 64 N. E. 573; *State, ex rel. Godfrey*, v. *O'Brien, Treas.*, 95 Ohio St., 166, 115 N. E., 25.

"On the other hand legislative acts granting to a board or an administrative agency quasi-legislative or quasi-judicial power, have been uniformly sustained *where the General Assembly has laid down the policy* and established the standards while leaving to an administrative agency the making of subordinate rules within prescribed limits and the determination of facts to which the legislative policy is to apply. See *Village of Fairview* v. *Giffee*, 73 Ohio St., 183, 76 N. E. 865; *Miami County* v. *City of Dayton*, 92 Ohio St., 215, 110 N. E. 726; *Fassig* v. *State, ex rel. Turner, Atty. Genl.*, 95 Ohio St., 232, 116 N. E. 104; *Green* v. *State Civil Service Commission*, 90 Ohio St., 252, 107 N. E., 531." (Emphasis added.)

With respect to standards in legislation under the police power, an exception to the requirement of specific standards is recognized where it is impossible or impractical to provide specific standards, and to do so would de-

feat the Legislature's object sought to be accomplished. *Weber* v. *Board of Health* (1947), 148 Ohio St. 389; *Pompei Winery* v. *Board of Liquor Control, supra* (167 Ohio St. 61).

No standards are discernible in the whole of R. C. Chapters 4301 and 4303, in the area of price regulation of the malt beverage industry, unless the narrow authority of R. C. 4301.041 be so considered. Whether such standards are "impossible or impractical to provide," a question we do not here consider, regulatory authority must still rest upon a discernible public policy declaration by the General Assembly of the need of such regulations in the statutes it has enacted and the delegation of authority to the agency for implementation.

Giving consideration to the wide discretion reposed in the commission and the broad purposes underlining R. C. Chapters 4301 and 4303, we, nevertheless, have concluded that claimed authority to regulate pricing practices of the malt beverage industry is not a power intended to be implied by the General Assembly in the general grants of express authority to the commission upon which appellants rely. In light of the specificity of the General Assembly in the areas wherein it has determined regulation to be necessary, its silence in a regulatory area of such substantial importance and impact is persuasive to us that no devolution of such power was intended. Although, undoubtedly, many evils exist which are so manifest that regulatory authority by the commission must be deemed implied to fully implement Chapters R. C. 4301 and 4303, we are not persuaded that the evils, here claimed to arise from special sales, are of that class.

Hence, the determination of the commission in the preamble that the regulation is necessary "in order to properly control the sale by the manufacturer and wholesale distributor of beer, lager beer, ale, stout, porter, or any other brewed malt liquor or malt beverages and in order to avoid economic social consequences which flow from unfair competition and improper practices in the sale and distribution of said products" and "to advance the social control of said alcoholic beverages, to stablize

their sale and distribution in Ohio, and to eliminate practices in the sale and distribution of said beverages which contravene the spirit and intent of the Liquor Control Act," represents an initial policy determination that properly rests with the General Assembly.

Inasmuch as we hold that the commission was without authority to adopt the rule, we do not reach the issue of reasonableness.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for STERN, J.