OPINION
{¶ 1} Appellant, Seouds Enterprises, Inc., d.b.a. Duke Long Store #4430, appeals from a judgment of the Franklin County Court of Common Pleas, affirming an order of appellee, Ohio Liquor Control Commission ("commission"), which suspended appellant's liquor permits for 60 days. Because we find no reversible error, we affirm the common pleas court's judgment.
 {¶ 2} Appellant, which owns and operates Duke Long Store #4430 in Sharonville, Ohio, possesses C-1, C-2, and D-6 liquor permits[1]
that authorize appellant to sell beer, wine, and mixed beverages on a carryout basis. On April 13, 2001, Herbert F. Pugh and Robert Reed, agents of the Ohio Department of Public Safety, Investigative Unit, visited Duke Long Store #4430. At approximately 8 p.m., Agent Pugh entered the store and posed as a patron, while Agent Reed remained outside. After selecting a jar of spaghetti sauce, a can of peas, a can of vegetables, a box of spaghetti, a box of cereal, and a 24-ounce can of malt liquor, Agent Pugh proceeded to the check-out counter. Agent Pugh informed the clerk, Rita Abouelseoud, Vice President of Seouds Enterprises, Inc., that he intended to pay for the items with food stamps via an electronic benefits transfer ("EBT") card.[2] Agent Pugh, with the assistance of Abouelseoud, then purchased the items with the EBT card and left the store. After leaving the store, Agent Pugh informed Agent Reed of his alcohol purchase with the EBT card. Subsequently, Agent Pugh, along with Agent Reed, re-entered the store. After identifying themselves to Abouelseoud, the agents advised Abouelseoud of the alleged violation, namely, allowing alcohol to be purchased with an EBT card or food stamps. Agent Reed then issued a violation notice to Abouelseoud.
 {¶ 3} On March 11, 2002, the commission mailed a notice to appellant that it would conduct a hearing on April 10, 2002, to consider whether appellant's liquor permits should be suspended or revoked, or whether a forfeiture should be ordered for an alleged violation of Ohio Adm. Code 4301:1-1-52. A request by Rita Abouelseoud for a continuance was denied.
 {¶ 4} At the April 10, 2002, hearing, Peter Swenty, President of Seouds Enterprises, Inc., denied the alleged violation, but stipulated to Agent Pugh's investigative report and the facts contained therein. In an unsworn statement, Swenty informed the commission that, at the time of the alleged violation, appellant had been in business for two years and had no prior violations. Swenty further stated the alleged violation occurred while there was a curfew in Cincinnati, Ohio. Due to the curfew and because the store is in close proximity to the northern boundary of Cincinnati, many people patronized the store that evening and therefore the store was extremely busy. According to Swenty, Abouelseoud, who was the only clerk on duty at the time, "just missed [the can of malt liquor] as it went through the cash register." (Tr. 5.)
 {¶ 5} At the April 10, 2002, hearing, Agent Pugh testified that he and Agent Reed previously had made several visits to the store. In the past, Agent Reed had bought eligible items. The agents' April 13, 2001, visit to the store was the agents' last visit.
 {¶ 6} Additionally, in unsworn testimony at the hearing, Abouelseoud testified:
I was checking IDs all the time for alcohol purchases, but [Agent Pugh] engaged me in conversation that he was crippled and injured in war. I was not concentrating. Everything is marked on top with purchase prices on top, so when he emptied his basket, I just was looking at numbers. I wasn't looking at items, and it just got by me. I don't do this. I don't intentionally and knowingly sell alcohol on food stamps. I have the video here of the transaction.
(Tr. 7-8.)
 {¶ 7} On April 23, 2002, the commission issued an order wherein the commission found appellant violated Ohio Adm. Code 4301:1-1-52. Accordingly, the commission ordered appellant's liquor permits to be suspended for 60 days. Appellant later moved the commission to reconsider its order; the commission denied appellant's motion.
 {¶ 8} On May 10, 2002, appellant appealed the commission's order to the Franklin County Court of Common Pleas. Upon appellant's motion, the common pleas court stayed the execution of the commission's suspension order during the pendency of appellant's appeal.
 {¶ 9} On January 14, 2003, finding the commission's order was supported by reliable, probative, and substantial evidence, and was in accordance with law, the common pleas court affirmed the commission's order.
 {¶ 10} From the common pleas court's January 14, 2003 judgment, appellant timely appeals and asserts three assignments of error:
FIRST ASSIGNMENT OF ERROR
The court of common pleas erred when it found that the order of the liquor control commission suspending appellant's liquor license for sixty (60) days was supported by reliable, probative, and substantial evidence and in accordance with law.
SECOND ASSIGNMENT OF ERROR
The court of common pleas erred as a matter of law by upholding the liquor control commission order suspending appellant's liquor license for sixty days (60) since the liquor control commission lacked the authority to promulgage an administrative rule regarding the illegal use of food stamps pursuant to ohio administrative code 4301:1-1-52.
THIRD ASSIGNMENT OF ERROR
The court of common pleas erred as a matter of law by upholding the liquor control commission order suspending appellant's liquor license for sixty days (60) since the liquor control commission failed to consider any mitigation of penalty.
 {¶ 11} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275, 280.
 {¶ 12} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Ohio Veterinary Med.Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra, at 111.
 {¶ 13} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion,i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id.
 {¶ 14} An appellate court does however have plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce, Div. OfSecurities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999),84 Ohio St.3d 1488; McGee v. Ohio State Bd. of Psychology (1993),82 Ohio App.3d 301, 305, citing Univ. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus, rehearing denied, 63 Ohio St.3d 1459, andIn re Raymundo (1990), 67 Ohio App.3d 262, 265, jurisdictional motion overruled, 53 Ohio St.3d 718.
 {¶ 15} Appellant's first assignment of error asserts the common pleas court erred when it found the commission's order was supported by reliable, probative, and substantial evidence. Specifically, appellant asserts the common pleas court erred when it found Abouelseoud "knowingly" and "willfully" permitted Agent Pugh to pay for his purchase with an EBT card.
 {¶ 16} According to Ohio Adm. Code 4301:1-1-52(B):
* * * [N]o permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
* * *
(5) Solicit for value, or possess, buy, sell, use, alter or transfer, or allow to be solicited, possessed, bought, sold, used, altered, or transferred for value USDA food stamp coupons, WIC program benefit vouchers, or other electronically transmitted benefits, in a manner not specifically authorized by the Food Stamp Act of 1977, or the Child Nutrition Act of 1966. A conviction or consent degree against the permit holder, its agent or employee for a violation of any of such acts constitutes evidence of a violation of this rule.
 {¶ 17} The terms "knowingly" and "willfully" are not defined in Ohio Adm. Code 4301:1-1-52(B). See, also, Ohio Adm. Code 4301:1-1-02
(definitions) ("knowingly" and "willfully" not defined); R.C. 4301.01
(definitions) ("knowingly" and "willfully" not defined). However, according to Black's Law Dictionary (7 Ed. 1999) 876, the term "knowing" may be defined as "deliberate; conscious[,]" e.g., "a knowing attempt to commit fraud[.]" "Willful," on the other hand, is defined as "[v]oluntary and intentional, but not necessarily malicious." Id. at 1593.
 {¶ 18} Thus, we must determine whether the common pleas court abused its discretion when it found reliable, probative, and substantial evidence existed to demonstrate Abouelseoud deliberately, consciously, voluntarily, or intentionally permitted Agent Pugh to transfer for value food stamp coupons in a manner not specifically authorized by the Food Stamp Act of 1977.[3]
 {¶ 19} Pursuant to R.C. 119.12, "a common pleas court is required to affirm if the commission's order is supported by `reliable, probative, and substantial evidence and is in accordance with law.'" VFWPost 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, 81. Furthermore, in connection with this standard, the Ohio Supreme Court has stated that "`an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of prior inconsistent statement, rest on improper inferences, or are otherwise unsupportable.'" Id., citing Ohio Historical Soc. v. StateEmp. Relations Bd. (1993), 66 Ohio St.3d 466, 471. Moreover, to determine whether there has been a violation, the commission may draw reasonable inferences based on evidence before it. VFW Post 8586, at 82.
 {¶ 20} Here, according to the investigative report to which the facts contained therein were stipulated by Peter Swenty, President of Seouds Enterprises, Inc., (1) Agent Pugh informed Abouelseoud he planned to pay for his selections with the EBT card after he brought the items to the check-out counter; (2) Agent Pugh's EBT card was visible to Abouelseoud; (3) Abouelseoud "even assisted Agent H. Pugh with processing his purchased items while using the EBT Card Machine[,]" Report at 2; and (4) Abouelseoud placed the items in a plastic bag and "gave the EBT receipt and bag of purchased items to Agent H. Pugh." Report at 2.
 {¶ 21} Based on these stipulated facts and notwithstanding Swenty's statement and Abouelseoud's unsworn testimony at the hearing, we conclude the commission reasonably could find Abouelseoud deliberately, consciously, voluntarily, or intentionally permitted Agent Pugh to transfer for value food stamp coupons in a manner not specifically authorized by the Food Stamp Act of 1977, as articulated through federal regulations, in violation of Ohio Adm. Code 4301:1-1-52. Therefore, the common pleas court did not err when it determined the commission's order was supported by reliable, probative, and substantial evidence.
 {¶ 22} Accordingly, appellant's first assignment of error is overruled.
 {¶ 23} Appellant's second assignment of error asserts the commission lacked authority to promulgate an administrative rule concerning the illegal use of food stamps pursuant to Ohio Adm. Code4301:1-1-52.
 {¶ 24} An administrative agency "has only such regulatory power as is delegated to it by the General Assembly." D.A.B.E., Inc. v.Toledo-Lucas Cty. Bd. of Health, 96 Ohio St.3d 250, 2002-Ohio-4172, at ¶ 38. Furthermore, "[a]uthority that is conferred by the General Assembly cannot be extended by the administrative agency." Id., citingBurger Brewing Co. v. Thomas (1975), 42 Ohio St.2d 377, 379.
 {¶ 25} In D.A.B.E., Inc., the court also stated:
"Such grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as may be reasonably necessary to make the express power effective. In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, if follows, as a matter of course, that there can be no implied grant.
"In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved not in favor of the grant but against it."
Id. at ¶ 39, 40, quoting State ex rel. A. Bentley Sons Co.v. Pierce (1917), 96 Ohio St. 44, 47.
 {¶ 26} A revised version of Ohio Adm. Code 4301:1-1-52 was enacted effective December 10, 1998. Prior to the commission's promulgation of Ohio Adm. Code 4301:1-1-52, R.C. 4301.03[4] provided:
The liquor control commission may adopt and promulgate, repeal, rescind, and amend, in the manner required by this section, rules, standards, requirements, and orders necessary to carry out Chapters 4301. and 4303. of the Revised Code * * *.
* * *
(B) Rules and orders providing in detail for the conduct of any retail business authorized under permits issued pursuant to such chapters, with a view to ensuring compliance with such chapters and laws relativethereto, and the maintenance of public decency, sobriety, and good order in any place licensed under such permits. * * *
(Emphasis added.)
 {¶ 27} According to Section 278.2(a), Title 7, C.F.R. "[food stamp] [c]oupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representative, and only in exchange for eligible food." Additionally, according to Section 271.2, Title 7, C.F.R. at all times pertinent to the proceedings, "[e]ligible food means: (1) Any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption." (Emphasis added.) See, also, Section 2013(c), Title 7, U.S. Code (Secretary of Agriculture may issue regulations for the effective and efficient administration of the food stamp program in accordance with procedures set forth in Section 553, Title 5, U.S.Code; prior to issuing regulation, Secretary of Agriculture required to submit a copy of the regulation to Congress with a detailed statement justifying it).
 {¶ 28} Generally, federal regulations may be given the force and effect of law. See United States v. Mead Corp. (2001), 533 U.S. 218,226-227, 121 S.Ct. 2164 (holding that "administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority");Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. (1984),467 U.S. 837, 843-844,104 S.Ct. 2778 (observing "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). (Footnote omitted.)
 {¶ 29} Here, absent any contention to the contrary by appellant, we assume Section 278.2(a), Title 7, C.F.R. and Section 271.2, Title 7, C.F.R. were properly promulgated and therefore have the force and effect of law. See, e.g., Section 2013(c), Title 7, U.S. Code (authorizing the Secretary of Agriculture to issue regulations pertaining to the food stamp program) and Mead Corp., supra, at 226-227. Therefore, because Section 278.2(a), Title 7, C.F.R. and Section 271.2, Title 7, C.F.R. have the force and effect of law, and because these federal regulations pertain, in part, to beverage alcohol sales, these federal regulations are therefore incidental or ancillary to the commission's express grant of authority under former R.C. 4301.03(B) to enact rules for the conduct of liquor permit holders with a view to ensuring compliance with "laws relative thereto." Accordingly, we find the commission had authority under former R.C. 4301.03(B) to promulgate Ohio Adm. Code 4301:1-1-52(B)(5) concerning the illegal use of food stamp coupons in relation to liquor permit holders.
 {¶ 30} Consequently, appellant's second assignment of error is overruled.
 {¶ 31} According to appellant's third assignment of error, because the commission failed to consider any mitigation of penalty, the common pleas court erred by affirming the commission's order.
 {¶ 32} On appeal, the common pleas court's power to modify the commission's order "is limited to the ground set forth in Section 119.12, Revised Code, i.e., the absence of a finding that the order is supported by reliable, probative, and substantial evidence." Henry's Cafe, Inc. v.Bd. of Liquor Control (1959), 170 Ohio St. 233, paragraph two of the syllabus. Furthermore, on appeal, the common pleas court "has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion." Id. at paragraph three of the syllabus.
 {¶ 33} Therefore, to the extent appellant contends the common pleas court erred because the common pleas court did not find the commission abused its discretion or modify the commission's penalty, appellant's contention is not persuasive. See id.
 {¶ 34} Furthermore, based on the record, we cannot determine whether the commission failed to consider mitigation evidence as appellant contends. Here, although the commission did not admit into evidence a video that Abouelseoud proffered, the commission did hear Swenty's unsworn statement that appellant had no prior violations and Abouelseoud's unsworn testimony about how busy the store was on the evening of April 13, 2001, and her claim that Agent Pugh distracted her.
 {¶ 35} In essence, appellant's contention resolves to a claim that the commission's 60-day suspension order was too harsh. However, as this court previously has observed, "[a]s a practical matter, courts have no power to review penalties meted out by the commission. Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh. * * * Perhaps the time to reconsiderHenry's Cafe has arrived, but the Supreme Court of Ohio must be the court to do that reconsideration." Lindner v. Ohio Liquor Control Comm. (May 31, 2001), Franklin App. No. 00AP-1430.
 {¶ 36} Accordingly, appellant's third assignment of error is overruled.
 {¶ 37} In summary, the commission did not exceed its authority when it promulgated Ohio Adm. Code 4301:1-1-52(B)(5) concerning the illegal use of food stamps in relation to liquor permit holders. Additionally, the record contains reliable, probative, and substantial evidence of the elements required to support the commission's finding that appellant violated Ohio Adm. Code 4301:1-1-52(B)(5). Moreover, because pursuant to R.C. 4301.25(A) the commission has authority to suspend or revoke a liquor permit for violations of R.C. Chapter 4301 or 4303, or any commission rule, the commission had the authority to suspend appellant's permits for 60 days. Therefore, we hold the common pleas court did not abuse its discretion when it found the commission's order was supported by reliable, probative, and substantial evidence.
 {¶ 38} Accordingly, for the foregoing reasons and having overruled all three of appellant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Watson, JJ., concur.
[1] Although appellant possessded C-1, C-2, and D6 liquor permits, only a single permit number was issued.
[2] See, generally, Ohio Adm. Code 5101:4-1-03(A) ("[food stamp allotment] may be issued in the form of coupons, check (cash-out), electronic benefit transfer [EBT], or other approved methods").
[3] See, also, Section 2013(c), Title 7, U.S. Code (Secretary of Agriculture may issue regulations for the effective and efficient administration of the food stamp program in accordance with procedures set forth in Section 553, Title 5, U.S.Code; prior to issuing regulation, Secretary of Agriculture required to submit a copy of the regulation with a detailed statement justifying it); Section 278.2(a), Title 7, C.F.R. ("[food stamp] [c]oupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representative, and only in exchange for eligible food"); Section 271.2, Title 7, C.F.R. in effect at all times pertinent to the proceedings ("[e]ligible food means: (1) Any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption").
[4] Prior to the commission's promulgation of Ohio Adm. Code 4301:1-1-52, effective December 10, 1998, R.C. 4301.03 was last amended effective July 1, 1997. Subsequent to July 1, 1997, R.C. 4301.03 has been amended by Sub.H.B. No. 371, effective October 11, 2002, and Am.Sub.H.B. 95, effective September 26, 2003.