[Cite as *State ex rel. DeWine v. Mass Realty, L.L.C.*, 197 Ohio App.3d 653, 2012-Ohio-146.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| The STATE ex. rel. | : | APPEAL NO. C-110279 |
| DEWINE, ATTORNEY GENERAL, | | TRIAL NO. A-0603011 |
| | : | |
| Appellant, | | *O P I N I O N.* |
| | : | |
| v. | | |
| | : | |
| MASS REALTY, L.L.C., | | |
| | : | |
| Appellee, et al. | | |
| | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  January 18, 2012

Michael DeWine, Attorney General, and John F. Cayton and Nicholas J. Bryan, Assistant Attorneys General, for appellant.

Xanders & Xanders Co., L.P.A., Gerald J. Robinson, and Christopher H. Hurlburt, for appellee.

Please note:  This case has been removed from the accelerated calendar.

SYLVIA S. HENDON, Judge.

{¶ 1}  This case involves an appeal from the trial court's ruling, following a bench trial, in an action that plaintiff-appellant, Ohio Attorney General Mike DeWine, on behalf of the Director of the Ohio Environmental Protection Agency ("EPA"), brought against defendant-appellee, Mass Realty, L.L.C. ("Mass Realty"). The trial court held that the state was not entitled to collect response costs that the EPA had charged against Mass Realty, and it assessed a $5,000 civil penalty against Mass Realty for violations of orders that had been issued by the EPA.

{¶ 2}  Because the trial court properly determined that the EPA was not entitled to collect response costs from Mass Realty, and because the court did not abuse its discretion when calculating the civil penalty to be assessed, we affirm its judgment.

### *Factual Background*

{¶ 3}  Mass Realty is the owner of the property located at 614 Shepard Drive in the city of Lockland. Prior to Mass Realty's purchase of that property, groundwater on the property had been contaminated with various volatile organic compounds. As a result of the contamination, the property's former owner, Evergreen Limited Partnership, had been subject to orders issued in 1991 by the director of the EPA that concerned the remediation of the water contamination. Evergreen had installed a ground-water-gradient-control system on the property to prevent the spread of the contaminated water.

{¶ 4}  Upon its purchase of the property, Mass Realty was also subject to a document titled "Director's Final Findings and Orders" ("order") that was issued

by the director of the EPA.  The order was signed by the director and Jeffrey Robinson, a member of Mass Realty, in February 2001.  The order required that Mass Realty operate and maintain the ground-water-gradient-control system that had been previously installed by Evergreen.  They provided that should Mass Realty successfully remediate the property so that contamination levels met standards set out in the order for a specified period of time, Mass Realty could petition the EPA to turn off the system.  But if Mass Realty was permitted to cease operation of the ground-water-gradient-control system, it was required to maintain the system to allow for resumed operation at any time.  Under the order, Mass Realty was additionally required to collect and analyze quarterly groundwater samples and to notify the EPA prior to all sample-collection activity, as well as to provide quarterly progress reports to the EPA.  If the groundwater samples indicated a rebound in contamination levels, Mass Realty was required to reactivate the ground-water-gradient-control system.

{¶ 5}  In addition to requiring remediation of the water contamination, the order also required that Mass Realty reimburse the EPA for all response costs that had been incurred in connection with the site.  Specifically, Mass Realty was required to pay the EPA approximately $89,000 in response costs that had been incurred prior to Mass Realty's purchase of the property, as well as all response costs incurred after the order was executed.

{¶ 6}   Mass Realty contracted with a company to handle the water sampling and maintain the ground-water-gradient-control system.  The system worked effectively at remediating the water contamination, and at the end of 2002 Mass Realty was permitted to cease operation of the system.  In 2004, the

EPA tested the water on Mass Realty's property. The testing revealed that the contaminant levels had rebounded, and pursuant to the order, the EPA requested that Mass Realty resume operation of the ground-water-gradient-control system. But as a result of financial difficulties, Mass Realty did not comply with the EPA's request and operation of the system was never resumed.

{¶ 7} Beginning in early 2003, Mass Realty failed to collect and analyze groundwater samples on a quarterly basis. It additionally failed to submit the required quarterly reports and a majority of the required payments towards the response costs owed. Consequently, the Attorney General, upon the EPA's request, filed suit against Mass Realty. The complaint alleged that Mass Realty had failed to operate and maintain a ground-water-gradient-control system, had failed to conduct groundwater monitoring and submit required reports, and had failed to pay the required response costs. The case proceeded to a bench trial, where the state sought approximately $116,000 in response costs, assessment of a civil penalty, and an injunction ordering Mass Realty to comply with the director's order.

{¶ 8} The trial court found that as a creature of statute, the EPA could not recover response costs. But with respect to the remaining relief sought, the trial court ordered Mass Realty to comply with the 2001 order and continue testing the waters on the property. Specifically, the court held, "[S]hould Mass [Realty] comply with the 2001 orders, no penalties should be assessed against it because of its prior breach. If Mass [Realty] fails to comply with the 2001 Orders, penalties should be awarded to Plaintiff."

{¶ 9}   The state appealed the trial court's ruling.  But this court found that because the trial court had deferred the issue of civil penalties, the judgment appealed from was not a final, appealable order.  Upon remand, the trial court found in favor of Mass Realty on the claim for injunctive relief, and it assessed a $5,000 civil penalty against Mass Realty for its past violations of the director's orders.

{¶ 10}  The state has again appealed to this court.  In two assignments of error, it argues that the trial court erred in finding that the EPA had no legal authority to collect response costs.  And in its second assignment of error, the state argues that the trial court abused its discretion when it failed to assess an appropriate civil penalty.

### Response Costs

{¶ 11} As stated, the order issued by the director of the EPA required Mass Realty to pay response costs incurred by Evergreen prior to Mass Realty's purchase of the property, as well as all future response costs incurred after the order was executed.  The order defined response costs as "all costs including, but not limited to, payroll costs, contractor costs, travel costs, direct costs, indirect costs, legal and enforcement-related costs, oversight costs, laboratory costs, the costs of reviewing or developing plans, reports, and other items pursuant to these Orders, verifying the Work, or otherwise implementing or enforcing these Orders."

{¶ 12} In support of its first assignment of error, the state argues that its authority to collect response costs was provided by two statutory provisions:  R.C. 3734.20(B) and R.C. 3745.01(C).

{¶ 13} The first provision relied upon, R.C. 3734.20(B), authorizes the director of the EPA to perform corrective measures necessary to prevent or abate air and water pollution. It further provides that "the director shall keep an itemized record of the cost of the investigation and measures performed, including costs for labor, materials, and any contract services required. Upon completion of the investigation or measures, the director shall record the cost of performing those measures. * * * Upon written request of the director, the attorney general shall institute a civil action to recover the cost." After review, we are not persuaded that this provision authorizes the director to collect the response costs provided for in the director's order.

{¶ 14} R.C. 3734.20(B) particularly delineates the types of costs that are authorized to be recovered. It allows the director to recover costs incurred by the EPA for investigations and corrective measures performed by or contracted out by the agency itself. The state has not demonstrated that it incurred such costs. Although the record contains highly detailed annual billing invoices, we cannot conclude that the charges are the type of "investigative" costs permitted by the statute. Rather, the agency is attempting to recoup normal office-overhead items while it has failed to itemize actual costs of "investigation" or "corrective measures." In fact, the corrective measures undertaken in this case were performed by Mass Realty and the corresponding costs were likewise incurred.

{¶ 15} The response costs sought to be recovered in this case, as defined in the order, clearly sought recoupment of costs well beyond those authorized by R.C. 3734.20(B). They included items such as payroll costs, travel costs, and enforcement-related costs. We cannot find that R.C. 3734.20(B) provided

6

authorization for the director to collect the type of response costs set out in the order.

{¶ 16} The state additionally relies upon R.C. 3745.01(C). This statute provides that the director of the EPA may "advise, consult, cooperate and enter into contracts or agreements with any other agencies of the state * * * and with affected groups, political subdivisions, and industries in furtherance of the purposes of this chapter and Chapters 3704., 3714., 3734., 3751., 3752., 6109., and 6111. of the Revised Code." The state contends that this provision is applicable because the condition in the order requiring payment of response costs furthered the purposes of R.C. Chapter 3734.

{¶ 17} We cannot agree. First, R.C. 3745.01(C) states that the director may enter into contracts and agreements with affected groups. But the present controversy involves neither a contract nor an agreement; rather, as shown by the title of the document, in this case the director has issued an order to Mass Realty. R.C. 3745.01(C) does not provide authority for the director to issue orders. Instead, the director's authority to issue orders is found in R.C. 6111.03(H), which provides that the director shall "[i]ssue, modify, or revoke orders to prevent, control, or abate water pollution." The collection of response costs does not fall within any of the enumerated means or manners in which the director may issue orders contained in R.C. 6111.03(H)(1) through (4). And R.C. 6111.03(H) does not contain broad language similar to that contained in R.C. 3745.01(C) allowing the director to generally issue any orders that would further the purposes of the environmental statutes.

{¶ 18} As an administrative agency of the state, the EPA "has only such authority, express or implied, as conferred upon it by the General Assembly." *Burger Brewing Co. v. Thomas*, 42 Ohio St.2d 377, 379, 329 N.E.2d 693 (1975). The EPA cannot extend its powers beyond those authorized by statute. We have found no statutory provision expressly authorizing the collection of the response costs, as defined in the orders, by the director of the EPA. We reach the same conclusion with respect to implied authority. An implied power " 'is only such as may be reasonably necessary to make the express power effective.' " *Id.* at 383, quoting *State ex rel. A. Bentley & Sons Co. v. Pierce*, 96 Ohio St. 44, 47, 117 N.E. 6 (1917). When determining whether an implied power exists, any potential doubt must be resolved against the grant of power. *Id.*

{¶ 19} The state argues that its power to collect response costs was implied by R.C. 3745.01(C). We have already found that the order issued by the director did not fall within the purview of this statute. But even if we were persuaded that R.C. 3745.01(C) was applicable here, we find that it did not provide implied authority to collect the response costs at issue. As previously discussed, R.C. 3734.20(B) allows the EPA to recover certain costs that it has incurred. The response costs sought recoupment of costs well beyond those authorized by that provision. Given that the general assembly has specifically provided for the recoupment of particularized costs, we find that R.C. 3745.01(C) cannot be used as an implied power to circumvent R.C. 3734.20 and allow the director to recover any and all types of costs.

{¶ 20} The state urges us to view the order not as an order issued by the director to Mass Realty, but rather as a contract negotiated at arm's length

8

between these two parties in which Mass Realty voluntarily and knowledgably consented to pay response costs. That position is untenable. As we have discussed, the law is clear that a state agency has only such authority as specifically conferred by statute. That authority includes the power to contract, and it necessarily follows that "[s]tate departments and agencies only have the limited power to contract which is delegated to them by the state legislature." *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 10th Dist. Nos. 92AP-1540 and 92AP-1541 (Sept. 30, 1993). A state agency cannot expand its powers and circumvent legislative intent by obtaining the voluntary consent of contracting parties. Such an action could result in unequal application of the law and violate public policy.

{¶ 21} The collection of the response costs provided for in the order was neither expressly nor impliedly authorized by statute. Accordingly, we find that the trial court correctly determined that the director was not authorized to collect these response costs. The first assignment of error is overruled.

### *Civil Penalty*

{¶ 22} In its second assignment of error, the state argues that the trial court abused its discretion by assessing a minimal civil penalty of $5,000. As stated in its proposed findings of fact and conclusions of law, the state had sought a civil penalty of approximately $417,280. After finding that Mass Realty had failed to comply with the director's order, the trial court assessed a $5,000 civil penalty.

{¶ 23} Pursuant to R.C. 6111.07(A), "no person shall violate or fail to perform any duty * * * or violate any order * * * issued or adopted by the director

9

of environmental protection." The attorney general may bring suit, upon request by the director of the EPA, against any party who violates the director's order. R.C. 6111.07(B). With respect to the penalty imposed for such a violation, the court may award up to, but not more than, $10,000 for each day of each violation. R.C. 6111.09(A) and 3734.13(C).

{¶ 24} The assessment of an appropriate penalty falls within the discretion of the trial court. *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 157-158, 438 N.E.2d 120 (1982). A trial court abuses its discretion in the imposition of a penalty when its decision involves more than an error in judgment, and is instead unreasonable, arbitrary, or unconscionable. *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982). A civil penalty should serve as a deterrent to prevent future violations. *Brown* at 157. In order to be an effective deterrent, a civil penalty "should be large enough to hurt the offender." *State ex rel. Brown v. Howard*, 3 Ohio App.3d 189, 191, 444 N.E.2d 469 (1981). When assessing a civil penalty, a court should consider whether the offender acted in good or bad faith, whether the defendant received a financial gain as a result of the violations, and whether the violation caused any environmental harm. *Id.*

{¶ 25} In this case, the trial court considered these relevant factors. With respect to good or bad faith on the part of Mass Realty, the court found that the record contained no evidence of bad faith. It further noted that despite the violations, Mass Realty had successfully remediated over 90 percent of the contamination and that financial hardship had been the driving force behind Mass Realty's noncompliance with the director's order. With respect to financial

gain, the court found that Mass Realty had received no net financial gain arising from its failure to comply with the order and that no member of Mass Realty had taken any income from the business. Last, the court found that the record contained no evidence that the contaminated water on Mass Realty's property had spread to any additional water sources and that very minimal environmental harm had resulted from Mass Realty's actions. The trial court further considered the deterrent effect of a penalty. It found that because Mass Realty's violations of the director's order had not been willful, a heavy fine would have little deterrent effect.

{¶ 26} After considering these factors, the trial court imposed a penalty of $5,000. While such a penalty seems low to this court, we cannot find that the trial court abused its discretion. The trial court provided detailed support for its penalty assessment, and its findings were supported by the record. The state argues that a $5,000 fine was not severe enough to serve as an effective deterrent. In light of the numerous violations committed by Mass Realty, this fine is clearly low. But considering Mass Realty's financial difficulties noted by the trial court, as well as the court's finding that no violations had been willful, we are not persuaded by the state's argument. The trial court's decision was in no manner arbitrary, unreasonable, or unconscionable, and we cannot find that it abused its discretion when imposing the civil penalty. The second assignment of error is overruled.

{¶ 27} The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

DINKELACKER, P.J., and CUNNINGHAM, J., concur.