[Cite as *Spellman Outdoor Advertising Servs., L.L.C. v. Ohio Turnpike & Infrastructure Comm.*, 2016-Ohio-7152.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO


| | | |
|---|---|---|
| SPELLMAN OUTDOOR ADVERTISING SERVICES, LLC, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | | |
| | : | **CASE NO. 2015-P-0081** |
| - vs - | | |
| | : | |
| OHIO TURNPIKE AND INFRASTRUCTURE COMMISSION, | : | |
| | | |
| Defendant-Appellant. | : | |


Civil Appeal from the Portage County Court of Common Pleas, Case No. 2015 CV 00050.

Judgment: Affirmed.


*Michael J. Sikora, III* and *Alexander E. Goetsch,* Sikora Law, L.L.C., 8532 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Bruce G. Rinker* and *John W. Monroe,* Mansour Gavin LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, OH 44114, and *Tommie Jo Marsilio*, Ohio Turnpike and Infrastructure Commission, 682 Prospect Street, Berea, OH 44017 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Ohio Turnpike and Infrastructure Commission ("OTIC"), appeals from the November 3, 2015 judgment of the Portage County Court of Common Pleas, denying its motion for summary judgment and granting appellee's, Spellman Outdoor

Advertising Services, LLC ("Spellman"), motion for summary judgment. For the reasons stated, we affirm.

{¶2} Spellman is an Ohio limited liability company conducting an advertising business in the state of Ohio. Martin Spellman is the president and owner of the company. OTIC was created by the General Assembly through the enactment of R.C. Chapter 5537. This matter involves a dispute between Spellman and OTIC concerning whether an alleged restriction asserted by OTIC, which would preclude billboards and other advertising, affects Spellman's interest in particular real property located at 9175 Main Street N., Windham, Portage County, Ohio 44288.

{¶3} By way of background, on February 15, 1946, H.W. Donaldson executed a deed conveying real property to David Mullett, Mary Mullett, Edward Mullett, and Raymond Mullett. The Donaldson deed was recorded on April 26, 1946.

{¶4} On March 16, 1953, the Mulletts executed a Warranty deed conveying real property to OTIC. The Spellman property was not described or conveyed in the Turnpike deed. The Turnpike deed was recorded on April 27, 1953 and contained the following Alleged Restriction:

{¶5} "Grantor(s), for his/her/their heirs, administrators, executors, and assigns, hereby covenant(s) with the State of Ohio and the Ohio Turnpike Commission and their successors and assigns that Grantor(s), his/her/their heirs, administrators, executors, and assigns shall not establish or maintain or permit any natural or legal person to establish or maintain on any of aforesaid remaining lands any billboard, sign, notice, poster advertising device, or other display which is visible from the travelway of Ohio

2

Turnpike Project No. 1, and which is not at the date hereof in existence. This covenant shall run with the land."

{¶6} On November 20, 1954, the Mulletts executed a Warranty deed conveying the Spellman property to Joseph M. and Elizabeth Varga. The Mullett deed contained a specific metes and bounds legal description of the Spellman property and only of the Spellman property. The Mullett deed did not include or make any reference to the foregoing Alleged Restriction contained in the Turnpike deed. The Mullett deed was recorded on December 8, 1954.

{¶7} On October 23, 1989, Joseph Varga and Bruce Varga, as co-executors of the Estate of Joseph M. Varga, conveyed the Spellman property to Willis Mulhern and Gloria Mulhern by Fiduciary deed. The Fiduciary deed contained a specific metes and bounds legal description of the Spellman property and only of the Spellman property. Like the Mullett deed, the Fiduciary deed did not include or make any reference to the foregoing Alleged Restriction contained in the Turnpike deed. The Fiduciary deed was recorded on November 9, 1989.

{¶8} In 2007, Spellman entered into a Lease with the Mulherns for the Spellman property. Spellman had no actual knowledge or constructive notice of the Alleged Restriction contained in the Turnpike deed when Spellman acquired its interest in the Spellman property. On August 9, 2007, a Memorandum of Lease was executed. The Memorandum summarized the terms of the Lease which expressly allow Spellman to erect and maintain outdoor advertising structures on the Spellman property. The Memorandum was recorded on November 26, 2007.

3

{¶9} On January 21, 2015, Spellman filed a complaint against OTIC in the Portage County Court of Common Pleas requesting quiet title and declaratory relief. On March 3, 2015, OTIC filed a motion to dismiss the complaint indicating that Spellman must exhaust its administrative remedies that it seeks in a then-pending R.C. Chapter 119 proceeding before the Ohio Department of Transportation ("ODOT").[1] In response, Spellman filed a memorandum in opposition. The trial court converted OTIC's motion to dismiss into a motion for summary judgment and granted the parties additional time to submit evidence and briefing.

{¶10} On April 23, 2015, Spellman filed a combined memorandum contra and a Civ.R. 56 motion for summary judgment. The next day, OTIC filed a motion for summary judgment.

{¶11} On November 3, 2015, the trial court denied OTIC's motion for summary judgment and granted Spellman's motion for summary judgment. Specifically, the court found that the Alleged Restriction contained in the Turnpike deed excluding billboards or other advertising does not encumber the Spellman property because it was not filed in the chain of title to the Spellman property. On November 20, 2015, OTIC filed a Civ.R. 60(B) motion for relief from judgment which was denied by the trial court. On November 24, 2015, OTIC filed a supplemental motion for relief from judgment and included a copy of ODOT's decision in the administrative appeal, which also was denied by the trial

---

1. In April 2012, Spellman filed three applications for billboard permits with ODOT. In July 2014, ODOT denied the applications. As a result, Spellman filed an R.C. Chapter 119 administrative appeal. Thereafter, OTIC filed a motion to intervene, which was later granted. An adjudication hearing commenced in May 2015. In August 2015, the hearing examiner recommended affirming the 2014 billboard application denial. The director of ODOT later accepted the recommendation and affirmed the denial of the permit applications on November 16, 2015. Spellman filed an appeal of ODOT's decision with the Franklin County Court of Common Pleas pursuant to R.C. 119.12. On April 5, 2016, the Franklin County Court of Common Pleas held that ODOT did not err in denying Spellman's permit applications.

4

court. Thereafter, OTIC filed a timely appeal with this court and asserts the following two assignments of error:

{¶12} "[1.] The trial court committed reversible error by failing to apply the judicial doctrine that requires the exhaustion of administrative remedies, in order to pre-empt forum-shopping, where a pre-existing and statutorily-mandated administrative appeal is pending in another state forum and whose adjudication is materially dispositive of the instant case.

{¶13} "[2.] The trial court committed reversible error in granting summary judgment when genuine issues of material fact exist."

{¶14} Preliminarily, we note that this appeal stems from the trial court's granting summary judgment in favor of Spellman.

{¶15} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See, e.g.,* Civ.R. 56(C).

{¶16} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary

5

judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶17} In its first assignment of error, OTIC argues the trial court erred in failing to apply the judicial doctrine that requires the exhaustion of administrative remedies. OTIC alleges that the administrative appeal concerning ODOT in the Franklin County Court of Common Pleas is materially dispositive of the instant case. OTIC maintains that Spellman does not have the right to set up this "parallel case."

{¶18} A party raising non-constitutional claims must exhaust any applicable administrative remedies before seeking separate judicial intervention. *San Allen v. Buehrer*, 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071, ¶72, citing *Roosevelt Properties Co. v. Kinney*, 12 Ohio St.3d 7, 8 (1984); *Herrick v. Kosydar*, 44 Ohio St.2d 128, 130 (1975); *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, paragraph two of the syllabus (1975); *Silverberg v. State Bd. of Pharmacy*, 8th Dist. Cuyahoga No. 51777, 1987 Ohio App. LEXIS 6905, *6-8 (Apr. 2, 1987).

{¶19} However, "[t]here are two exceptions to the above rule. First, *if there is no administrative remedy available which can provide the sought after relief*, or if pursuing

6

administrative remedies would be wholly futile, exhaustion is *not* required.  *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 17 * * *.  Second, exhaustion of administrative remedies is also unnecessary when the available remedy is onerous or unusually expensive.  *Id.*" (Emphasis added.) (Parallel citation omitted.)  *Bullard v. City of Warren*, 11th Dist. Trumbull No. 99-T-0171, 2000 Ohio App. LEXIS 6123, *10 (Dec. 22, 2000).

{¶20}  In this case, it is OTIC's position that Spellman's private cause of action regarding substantive real property rights which is before this court and the administrative permit application function concerning ODOT in the permit proceeding are identical.  Although there are factual similarities between the two cases, we disagree with OTIC that they are one and the same.

{¶21}  At issue in this case is Spellman's complaint against OTIC in the Portage County Court of Common Pleas requesting quiet title and declaratory relief concerning real property.  The Court of Common Pleas (and this court on appeal) has exclusive jurisdiction and authority to decide such actions.  ODOT does not.  *See generally Sturgell v. Bott*, 12th Dist. Fayette No. CA90-09-014, 1991 Ohio App. LEXIS 2357, *4 (May 20, 1991) (quiet title); *Quayle v. Buckeye Loc. School Dist. Bd. of Ed.*, 11th Dist. Ashtabula No. 94-A-0074, 1995 Ohio App. LEXIS 4020, *6-7 (Sept. 15, 1995) (declaratory judgment).

{¶22}  At issue in the ODOT case is the denial of Spellman's permit applications.  ODOT has the authority to issue such permits under R.C. Chapter 5516.  *See* R.C. 5516.03 (the director of ODOT shall adopt, amend, and enforce rules for outdoor advertising); R.C. 5516.10 (in order to advertise on interstate highways individuals shall obtain a permit from the director of ODOT); R.C. 5516.12 (the director of ODOT has

7

authority to cancel existing permits and order the removal of signs). In turn, Spellman has the right to appeal ODOT's decision regarding the permit applications, which it has done, to a court of proper jurisdiction, i.e., the Franklin County Court of Common Pleas. *See* R.C. 119.12. Although the permit issue was on appeal before the Franklin County Court of Common Pleas, that appeal only involved the review of ODOT's administrative determination.

{¶23} The case here involves a real property issue. Spellman filed the action to quiet title to the Spellman property and to obtain a declaration that the Alleged Restriction in the 1953 Turnpike deed does not affect the Spellman property as a matter of law. Pursuant to R.C. Chapter 5516, ODOT's administrative authority is expressly limited by statute to billboard permits. ODOT's authority does not extend or include the power to decide substantive real property rights. *See State ex rel. Lucas Cty. Bd. of Commr. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 171 (2000) ("An administrative agency has no authority beyond the authority conferred by statute and it may exercise only those powers that are expressly granted by the General Assembly.")

{¶24} Contrary to OTIC's suggestion, this case does not involve the administrative function of issuing permits or, specifically, the denial by ODOT of Spellman's permit applications. Rather, this case and the ODOT proceedings are narrowly focused and involve distinct issues. The relief Spellman is seeking in the quiet title/declaratory judgment action is not available in the ODOT permit proceeding, as ODOT does not have jurisdiction or authority to decide substantive real property rights. Thus, based on the facts presented, as there is no administrative remedy that could provide the sought after relief, exhaustion is not required. *Karches, supra,* at 17.

{¶25} OTIC's first assignment of error is without merit.

{¶26} In its second assignment of error, OTIC contends the trial court erred in granting Spellman's motion for summary judgment and alleges that genuine issues of material fact exist.

{¶27} "'Pursuant to Civ.R. 56(C), a court may not consider any evidence when ruling on a motion for summary judgment unless it conforms with Civ.R. 56.'" *Rilley v. Twp. of Brimfield*, 11th Dist. Portage No. 2009-P-0036, 2010-Ohio-5181, ¶57, quoting *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, ¶21 (7th Dist.). "'Civ.R. 56(C) provides the exclusive list of documentary evidence to support a summary judgment motion: affidavits, depositions, answers to interrogatories, written admissions, transcripts of evidence in the pending case, and written stipulations. No other evidence may be considered. Civ.R. 56(C). Other documentary evidence may be admitted; however, the appropriate method to introduce this evidence is by way of an affidavit that complies with Civ.R. 56(E).'" *Rilley, supra,* at ¶61, quoting *Drawl v. Cornicelli*, 124 Ohio App.3d 562, 569 (11th Dist.1997), citing *Martin v. Central Ohio Trans. Auth.*, 70 Ohio App.3d 83, 89 (10th Dist.1990).

{¶28} As stated, Spellman filed a motion for summary judgment on April 23, 2015. Spellman's motion was supported by the affidavits of its president and owner, Martin Spellman, and James Masi, an attorney and title examination expert.

{¶29} Spellman stated in his affidavit that he is familiar with all aspects of Spellman's business, is the custodian of records for Spellman, and has personal knowledge of all transactions involving Spellman. Spellman personally executed the Lease Agreement on behalf of Spellman to lease the property at issue. The Lease

9

allows Spellman to erect and maintain outdoor advertising structures on the property. In 2007, a Memorandum of Lease was executed and recorded to memorialize the existence of the Lease in the chain of title to the property. At all times before and during the finalization and execution of the Lease and the Memorandum, Spellman had no actual knowledge of any restrictive covenants including the Alleged Restriction at issue. Spellman further said he is not an heir, administrator, executor, and/or assign of the Mulletts.

{¶30} Masi has been a licensed title agent for over 24 years and has examined the chains of title to thousands of parcels of real property. Masi examined the documents at issue, explained how the chain of title to the Spellman property was created, and stated how that chain flows to Spellman. Masi indicated that the Turnpike deed and the Alleged Restriction contained therein are not filed in the chain of title to the Spellman property and are not referenced in instruments in the chain of title to the Spellman property. Based on his extensive experience, Masi opined to a reasonable degree of certainty and under the applicable title standards that the Turnpike deed does not afford constructive notice that the Alleged Restriction affects title to the Spellman property and that the Mulherns and Spellman would not have had constructive notice that the Alleged Restriction affects title to the property.

{¶31} On April 24, 2015, OTIC filed a motion for summary judgment. OTIC did not argue in its motion that genuine issues of material fact exist that preclude an order granting summary judgment in favor of Spellman. Rather, OTIC relied solely on the following: a letter from ODOT's administrator that attached a copy of ODOT's July 8, 2014 letter denying Spellman's permit applications; a copy of Spellman's notice of

10

appeal in the permit proceeding; and copies of two letters regarding the scheduling of a hearing in the permit proceeding. None of the documents relied on by OTIC in support of its motion for summary judgment addressed in any manner the merits of the quiet title and declaratory judgment claims at issue before the trial court. As such, OTIC failed to meet its burden of production to submit Civ.R. 56 evidence to demonstrate a genuine issue of material fact.

{¶32} We note that OTIC did not ask the trial court for additional time to obtain and submit evidence pursuant to Civ.R. 56(F). Instead, after the trial court denied OTIC's motion for summary judgment and granted Spellman's motion for summary judgment, OTIC filed a Civ.R. 60(B) motion for relief from judgment which was denied by the trial court. OTIC then filed a supplemental motion for relief from judgment which was also denied by the trial court. We find the trial court committed no error in its decisions.

{¶33} Civ.R. 60(B) is not intended to permit parties to have "'do-overs.'" *Adams v. Pitorak & Coenen Invests., Ltd.*, 11th Dist. Geauga No. 2009-G-2931 and 2009-G-2940, 2010-Ohio-3359, ¶84. Otherwise, a party who receives an unfavorable ruling could use Civ.R. 60(B) to have potentially unlimited opportunities to submit additional evidence or present new legal theories, "essentially asking the court each time, 'is this enough.' Such 'second bites at the apple' are not authorized by the Rules of Civil Procedure." *Id.* at ¶85.

{¶34} On appeal, OTIC relies on evidence that was not before the trial court when it rendered its decision denying OTIC's motion for summary judgment and granting Spellman's motion for summary judgment. However, this court may not

11

consider evidence that the trial court did not consider. *Bader v. Ferri*, 3d Dist. Allen No. 1-13-01, 2013-Ohio-3074, ¶14, citing *Reynoldsburg, supra,* at 360. OTIC is not permitted a "second bite at the apple." *Adams, supra,* at ¶84-85.

**{¶35}** Based on the facts in this case, the Alleged Restriction in the Turnpike deed does not encumber the Spellman property as a matter of law. The trial court's decision on this issue is consistent with a 2010 determination made by the Sixth District Court of Appeals, which affirmed the judgment of the trial court, in a case involving both OTIC and Spellman on virtually the same facts. *Ohio Turnpike Comm. v. Spellman Outdoor Advertising Servs., LLC*, 6th Dist. Erie No. E-09-038, 2010-Ohio-1705, appeal not allowed, 126 Ohio St.3d 1549 (there was no constructive notice of the restrictions and the restrictions were not recorded in the chain of title for the property). The Alleged Restriction at issue here is not in the chain of title to the Spellman property and, therefore, the Spellman property is not subject to the restrictive covenant in question. *See Id.* at ¶15; *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333 (1984).

**{¶36}** Similar to *Spellman,* OTIC argues on appeal in this case that the Marketable Title Act, R.C. 5301.47 through 5301.56, is dispositive.

**{¶37}** The Ohio Marketable Title Act deals with marketability in commerce and can always be raised as it should be construed in pari materia with the recording statutes. *See Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, ¶109-111 (Kennedy, J., concurring and concurring in part).[2] The Marketable Title Act deals with a time period and is separate from a chain of title analysis.

---

2. We are aware that other districts have determined that the Ohio Marketable Title Act must be raised as a defense. *See Collins v. Moran*, 7th Dist. Mahoning No. 02 CA 218, 2004-Ohio-1381, ¶20; *Tivenan v. Lons*, 9th Dist. Medina No. 03CA0147-M, 2004-Ohio-4975, ¶7. However, we find that the Marketable Title Act can always be raised by following the reasoning of the Ohio Supreme Court as the Act should be

**{¶38}** "The General Assembly enacted the Ohio Marketable Title act in 1961, '(* * *) to simplify and facilitate land title transactions by allowing persons to rely on a record chain of title (* * *).' The act is to be construed liberally to effect that purpose. *Semachko v. Hopko* (1973), 35 Ohio App.2d 205, 209 * * *." (parallel citations omitted.) *Ealy v. Nixon*, 6th Dist. Erie No. E-09-046, 2010-Ohio-2120, ¶26; *see Evans v. Thomas J. Evans Found.*, 5th Dist. Licking No. 09 CA 76, 2010-Ohio-541, ¶17 ("Ohio's Marketable Title Act, R.C. 5301.47 to 5301.56, which became law [over] fifty years ago as a means of simplifying land title transactions by allowing persons to rely on a record chain of title as set forth in the pertinent statutes and by eliminating 'ancient interests' which operate to cloud otherwise clear titles. * * * The Act functions as 'a 40-year statute of limitations for bringing claims against a title of record.' * * * R.C. 5301.55 states that the Act 'shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions (***).'" (Citations omitted.)); *see also* www.oilandgaslawreport.com/2013/11/14/the-ohio-dormant-minerals-act-part-1 ("Note that there is no notice requirement to or for the benefit of possible adverse claimants. It's automatic.")

**{¶39}** The Ohio Marketable Title Act states:

**{¶40}** "Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest as defined in section 5301.47 of the Revised Code, subject to the matters stated in section 5301.49 of the Revised Code.

---

construed in pari materia with the recording statutes. *See Chesapeake, supra,* at ¶109-111 (Kennedy, J., concurring and concurring in part).

13

**{¶41}** "A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest, either in:

**{¶42}** "(A)  The person claiming such interest; or

**{¶43}** "(B) Some other person from whom, by one or more conveyances or other title transactions of record, such purported interest has become vested in the person claiming such interest; with nothing appearing of record, in either case, purporting to divest such claimant of such purported interest."  R.C. 5301.48.

**{¶44}** R.C. 5301.47(A) provides: "'[m]arketable record title'" * * * operates to extinguish such interests and claims, existing prior to the effective date of the root of title * * *."

**{¶45}** Similarly, R.C. 5301.50 provides: "* * * record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear or all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title. All such interests, claims, or charges, however denominated, whether legal or equitable, present or future, whether such interests, claims or charges are asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

**{¶46}** Marketable record title is subject to matters specified at R.C. 5301.49:

14

**{¶47}** "(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code;

**{¶48}** "(B) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 5301.51 of the Revised Code;

**{¶49}** "(C) The rights of any person arising from a period of adverse possession or user, which was in whole or in part subsequent to the effective date of the root of title;

**{¶50}** "(D) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code;

**{¶51}** "(E) The exceptions stated in section 5301.53 of the Revised Code."

**{¶52}** "As stated in *Toth v. Berks Title Ins. Co.* (1983), 6 Ohio St.3d 338, 342 * * *, '(i)n general, the Marketable Title Act operates to extinguish interests and claims in

15

existence prior to the effective date of the root of title.' See R.C. 5301.47(A) and 5301.50. However, R.C. 5301.49 and 5301.51 provide for the preservation of certain interests in existence prior to the root of title if properly noted subsequent to the root of title. Thus, the Marketable Title Act does not bear upon interests which are created after the date of the root of title.

{¶53} "'"Root of title" means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it is recorded.' R.C. 5301.47(E). See *Toth*, supra, at 338." (Parallel citation omitted.) *Spellman, supra,* at ¶17-18.

{¶54} A "'[t]itle transaction' means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F).

{¶55} "'(M)arketable title acts are intended to operate in conjunction with, rather than as a substitute for, the recording statutes.' *Spring Lakes,* [*supra,* at] 338 * * * (Holmes, J., concurring). '(T)he purpose of the recording statutes is to give notice to all persons subsequently acquiring rights or interests in the land.' *Marshall v. Ebling*, 70 Ohio App. 145, 155 * * * (7th Dist.1942). As noted by the Supreme Court of Rhode Island, '(t)he general purpose of land-recording statutes is to provide a public record of

16

transactions *affecting title* to land.' (Emphasis added.)  *In re Barnacle*, 623 A.2d 445, 447 (R.I.1993)

{¶56} "'It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.' *State v. Moaning*, 76 Ohio St.3d 126, 128 * * * (1996). Where statutes address the same subject matter, '(they) must be construed in pari materia and harmonized so as to give full effect to the statutes.' *State ex rel. Westlake v. Corrigan*, 112 Ohio St.3d 463, 2007-Ohio-375 * * * ¶20.

{¶57} "Because a marketable title requires an easily traceable chain of recorded title consideration of the recording statutes is necessary." (parallel citations omitted.) *Chesapeake, supra,* at ¶109-111 (Kennedy, J., concurring and concurring in part).

{¶58} With that background, in the case at bar, the root of title is the most recently recorded deed that was recorded 40 or more years prior to the November 26, 2007 date that the Memorandum was recorded, which is the 1954 Mullett deed.  The Alleged Restriction appeared only in the 1953 Turnpike deed which conveyed the turnpike property to OTIC.  A review of the instruments conveying an interest in the Spellman property from the root of title (the Mullett deed) to November 26, 2007 reveals no mention whatsoever of the Alleged Restriction and/or the Turnpike deed.  Thus, the Alleged Restriction was only contained in a prior recorded deed in the chain of title to the turnpike property, not in an instrument within the chain of title to the Spellman property.  Therefore, the Alleged Restriction is outside the chain of title to the Spellman property and, thus, does not attach to the Spellman property.  *See Spring Lakes, supra,*

17

at 335-337 (a restriction is not enforceable against real property if it is not recorded in that particular property's chain of title.)

{¶59} Although OTIC argues that the Alleged Restriction in the Turnpike deed does attach to the Spellman property because OTIC is an instrumentality of the state, we note that in 2007, when Spellman obtained its interest in the Spellman property, OTIC was not an instrumentality of the state as such statutory language in R.C. 5537.02 took effect four years later in 2013. Thus, the Marketable Title Act did not apply to preserve the Alleged Restriction. The Alleged Restriction does not afford constructive notice that it encumbers the Spellman property and the Spellman property is not encumbered or affected by the Alleged Restriction. The Alleged Restriction has no effect on the Spellman property as a matter of law.

{¶60} OTIC's second assignment of error is without merit.

{¶61} For the foregoing reasons, OTIC's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.


_____


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶62} I agree with the majority's holding in favor of Spellman and in its analysis of the first assignment of error. I write separately to explain that, under the second assignment of error, it is unnecessary to conduct a lengthy analysis of the Ohio

18

Marketable Title Act, primarily due to OTIC's failure to raise any arguments relating to the merits of the property restriction claim below until filing the Civ.R. 60(B) Motion.

**{¶63}** While the majority cites an extensive body of law relating to the Marketable Title Act, it is important to emphasize that it is unnecessary to apply this law in order to rule in favor of Spellman. A thorough analysis of the chain of title issues would adequately resolve this, were it necessary to reach the merits. *See Ohio Turnpike Commn. v. Spellman Outdoor Adver. Servs., LLC*, 6th Dist. Erie No. E-09-038, 2010-Ohio-1705, ¶ 33 ("Even though the governmental exception under the Marketable Title Act would apply to preserve an otherwise validly recorded restriction, the Salmons did not have constructive notice of the restrictions; nor were the restrictions recorded in the chain of title for the Salmons' property.").

**{¶64}** Importantly, OTIC failed to adequately raise the Marketable Title Act exception as a defense below. Multiple appellate courts in Ohio have held that the failure to raise issues relating to marketable title constitutes waiver. *Tivenan v. Lons*, 9th Dist. Medina No. 03CA0147-M, 2004-Ohio-4975, ¶ 7; *Covert v. Koontz*, 7th Dist. Monroe No. 13 MO 8, 2015-Ohio-228, ¶ 16. In this case, OTIC is essentially asserting that the Marketable Title Act cannot be used to prevent enforcement of the restriction, an argument not raised in the summary judgment proceedings, either in OTIC's Motion or in response to Spellman's Motion. Instead, OTIC focused solely on the argument that the administrative proceedings prevented Spellman from pursuing this matter. This was the sole basis for its arguments until the Civ.R. 60(B) Motion was filed.

**{¶65}** The majority contends that the applicability of the Marketable Title Act can "always be raised," noting the Ohio Supreme Court's observation that "the Act should be

19

construed in pari materia with the recording statutes." *Supra* at ¶ 37, fn. 2. The Supreme Court, however, did not actually reach a holding as to whether marketable title issues can be raised at any time and the principle cited by the majority does not provide support for such a conclusion. Whether the instrumentality exception to the Marketable Title Act applies is entirely different from and, as noted above, not tied to, a determination of whether a restriction is contained in a chain of title. Further, during summary judgment, OTIC did not address the merits of the chain of title issue; it relied solely on its argument that the matter was barred by the administrative proceedings and that Spellman was forum shopping. Since the trial court rejected that argument, OTIC essentially tried to assert alternative grounds for granting summary judgment through a Civ.R. 60(B) motion, which is impermissible.

{¶66} It is unnecessary for this court to give due consideration to arguments on the merits of claims that OTIC did not raise below, given its apparent, incorrect belief that this case would be dismissed due to the pending administrative matter. OTIC should not get a second chance to present evidence and argumentation that could have been submitted prior to the court's final judgment. *See Citigroup Global Mkts., Inc. v. Masek*, 11th Dist. Trumbull No. 2008-T-0060, 2009-Ohio-1832, ¶ 30.

{¶67} For the foregoing reasons, I concur in judgment only.

20