[Cite as *Spellman Outdoor Advertising Servs, L.L.C. v. Ohio Dept. of Transp.*, 2017-Ohio-950.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Spellman Outdoor Advertising Services, LLC, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | No. 16AP-343 |
| | : | (C.P.C. No. 15CV-10708) |
| Ohio Department of Transportation c/o Outdoor Advertising Device Control Section, Division of Construction Management et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 16, 2017

**On brief:** *Sikora Law LLC, Michael J. Sikora, III* and *Alexander E. Goetsch*, for appellant. **Argued:** *Michael J. Sikora, III.*

**On brief:** *Michael DeWine*, Attorney General, *Gregory S. Severance, William J. Cole* and *Eric M. Hopkins*, for appellees Ohio Department of Transportation and Jerry Wray. **Argued:** *Eric M. Hopkins.*

**On brief:** *Mansour Gavin LPA, Bruce G. Rinker* and *John W. Monroe*; *Jennifer L. Stueber* and *Tommie Jo Marsilio*, General counsel; *Organ Cole LLP, Douglas R. Cole* and *Erik J. Clark*, for appellee The Ohio Turnpike and Infrastructure Commission. **Argued:** *Erik J. Clark.*

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Appellant, Spellman Outdoor Advertising Services, LLC ("Spellman"), appeals from the April 5, 2016 decision and entry of the Franklin County Court of

Common Pleas affirming the November 16, 2015 order of the Director of the Ohio Department of Transportation ("ODOT") denying Spellman's permit applications for outdoor advertising billboards along the Ohio Turnpike. For the reasons that follow, we reverse the judgment of the court of common pleas.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On March 16, 1953, David E. Mullet, Mary S. Mullet, and Edward D. Mullet conveyed a strip of land from a larger piece of property to the Ohio Turnpike Commission ("OTC")[1] to be used for the planned construction of the Ohio Turnpike. This strip of land consisted of approximately 14.5 acres and is referred to as the "Turnpike Property." A warranty deed was recorded with the Portage County Recorder's Office on April 23, 1953, and contained the following restriction:

> Grantor(s), for his/her/their heirs, administrators, executors, and assigns, hereby covenant(s) with the State of Ohio and the Ohio Turnpike Commission and their successors and assigns that Grantor(s), [] their heirs, administrators, executors, and assigns shall not establish or maintain or permit any natural or legal person to establish or maintain on any of aforesaid remaining lands any billboard, sign, notice, poster, advertising device, or other display which is visible from the travelway of Ohio Turnpike Project No. 1, and which is not at the date hereof in existence. This covenant shall run with the land.

 (ODOT Ex. B.) ("Mullet Restriction.")

{¶ 3} When the Turnpike Property was deeded to OTC, the Mullet property, consisting of 80.34 acres, was divided into three segments. First, there was the Turnpike Property itself. Then there was a 58.2 acre portion that remained north of the Turnpike Property. Then there was a 7.6 acre portion south of the Turnpike Property that is at issue in this case and is referred to by the parties as the "Spellman Property." The division of the Mullet property into those three segments is included in an acreage report attached to the Turnpike deed.

{¶ 4} After the Turnpike deed was recorded in 1953, the Spellman Property was transferred three times with the final transfer to Willis and Gloria Mulhern (the

---

[1] The Ohio Turnpike Commission is now known as the Ohio Turnpike and Infrastructure Commission ("OTIC").

"Mulherns") recorded in 1989. None of the transfers of the Spellman Property made reference to the Mullet Restriction. No instrument in the chain of title to the Spellman Property includes, takes exception to, or references in any way, the Mullet Restriction.

{¶ 5} In August 2007, Spellman entered into a lease with the Mulherns to erect and maintain outdoor advertising structures on the Spellman Property located at 9175 N. Main Street, Windham, in Portage County, Ohio. The lease was recorded on November 26, 2007 in Portage County in the chain of title to the Spellman Property. (Memorandum of Lease.)

{¶ 6} In August 2007, Spellman obtained a property report for the Spellman Property which stated in pertinent part: "THERE WERE NO RESTRICTIONS OF RECORD FOUND AT THIS TIME, PORTAGE COUNTY RECORDS, OHIO." (Hearing Officer's Report and Recommendation at 2.)

{¶ 7} Spellman then applied to ODOT for four outdoor advertising permits. On September 26, 2007, ODOT issued the permits for billboards that would be visible to persons traveling eastbound on the Ohio Turnpike ("Eastbound Readers"). Spellman than applied for four additional permits for advertising that would be visible on the reverse side of the billboards to persons traveling westbound on the Ohio Turnpike ("Westbound Readers.") ODOT approved those applications on November 15, 2007. Spellman eventually constructed one billboard. The other three were not constructed at the time due to economic conditions.

{¶ 8} Two years later, as required by statute, Spellman sought and subsequently received renewals for the three billboards that had not been constructed. Those renewals were valid until September 30, 2011 for the Eastbound Readers and November 30, 2011 for the Westbound Readers.

{¶ 9} On April 2, 2012, after a mandatory six-month wait, Spellman applied for further renewal of the permits for the billboards that had not yet been constructed. The 2012 permit applications are for the permits at issue in this appeal. The applications contained an acknowledgment that was executed by Martin Spellman, as President of Spellman, and the Mulherns. The acknowledgment provided:

> I hereby acknowledge the sign owner's right to occupy the
> land at the sign location and understand that if ordered by

> the Ohio Department of Transportation removal of the sign is subject to the provisions of Section 5516.04 of the Ohio Revised Code.

(May 14, 2015 Tr. Vol. I at 104.)

{¶ 10} On July 8, 2014, ODOT denied the permits after communication with OTIC about the 1953 Mullet Restriction. ODOT stated the basis for denial was as follows:

> Ohio Revised Code Section 5156.12 (D) states that the director of transportation may disapprove, cancel, or revoke any permit requested or issued under this chapter if the director determines that the location does not conform to the laws and rules of the state. A deed restriction is considered a "law and rule of the state" pursuant to the Ohio Marketable Title Act Sections 5301.47 to 5301.63 of the Ohio Revised Code. A landowner must be able to demonstrate that they have legal control over the property on which they want to place their advertising device. If the property has an underlying deed restriction (that affects the use of the permit application) then the property owner cannot show control. Also the applicant does not have the required control over the proposed locations to erect advertising devices per ORC 5516.10(B)(1).

(Letter of July 8, 2014 from Lauren Purdy to Marty Spellman.)

{¶ 11} Spellman appealed the denial, and ODOT conducted an R.C. Chapter 119 administrative appeal hearing over three days in May and June of 2015. OTIC moved to intervene, and the hearing officer granted the motion to allow OTIC to present evidence regarding the validity and enforceability of the Mullet Restriction as applied to the Spellman Property.

{¶ 12} Meanwhile, in January 2015, Spellman filed a complaint to quiet title and for declaratory relief against OTIC in the Portage County Court of Common Pleas, where the property lies. *See Spellman Outdoor Advertising Services, LLC v. Herr,* Portage C.P. No. 2015 CV 0050 (Nov. 3, 2015) (Order and Journal Entry.) ("Nov. 3, 2015 Order.")

{¶ 13} At the administrative hearing, the parties presented testimony addressing the validity of the Mullet Restriction. Spellman presented an expert witness who testified that the 1953 deed restriction was not included in the chain of title to the Spellman

Property. OTIC presented an expert witness who testified that a due diligent search would have revealed the 1953 deed restriction.

{¶ 14} At the hearing, Lauren Purdy, the Administrator of the Office of Contract Sales, acknowledged that the basis for the denial was the existence of the Mullet Restriction, and she did not know whether the restriction was in the chain of title to the Spellman Property. (Tr. at 225-26, 229-30.) Purdy stated: "I'm not a title expert. I didn't conduct a title search. I already testified to that. But based upon the existence of the restriction, uhm, I felt that it created a lack of site control." (Tr. at 235.)

{¶ 15} The hearing officer did not find it necessary to resolve the issue of the validity of the Mullet Restriction; instead, the hearing officer focused on interpreting R.C. 5516.10(B)(1), which provides as follows:

> As part of the application process, the director may require an acknowledgment to be signed by the owner or person in lawful possession or control of the proposed location of the advertising device. Such acknowledgment may include, but shall not be limited to, a statement that the applicant has the right to occupy the land at the subject location, that if at any time removal is required, the owner or person in lawful possession or control of the location may be jointly liable, and that the applicant may only occupy the land for a specified time period. If legal use of the location is terminated at any time during the permit period, the permit is subject to cancellation pursuant to section 5516.12 of the Revised Code.

ODOT calls this requirement "site control." (Brief of Appellee ODOT at 8.)

{¶ 16} The hearing officer rejected Spellman's argument that R.C. 5516.10(B)(1) only required an acknowledgment of control and did not give the director the ability to deny a permit for lack of site control. The hearing officer then found that an ambiguity existed regarding the validity of the Mullet Restriction. In light of this ambiguity, the hearing officer determined that "it would be inappropriate to determine ODOT abused its discretion in making a decision based on the evidence before it at the time." (Hearing Officer's Report and Recommendation at 6.) In August 2015, the hearing officer then recommended confirmation of ODOT's denial of the permit applications. The director of

ODOT accepted the recommendation and affirmed the denial of the permit applications on November 16, 2015.

{¶ 17} Meanwhile, on November 3, 2015, the Portage County Court of Common Pleas granted summary judgment in favor of Spellman, concluding that the Mullet Restriction was outside the chain of title to the Spellman Property and declaring that the Mullet Restriction did not affect the Spellman Property as a matter of law. (Nov. 3, 2015 Order.) On September 30, 2016, the Eleventh District Court of Appeals affirmed the common pleas order granting summary judgment in favor of Spellman, noting that the court of common pleas has exclusive jurisdiction and authority to decide quiet title and declaratory judgment actions, and that ODOT's authority does not extend or include the power to decide substantive property rights. *Spellman Outdoor Advertising Servs. v. Ohio Turnpike & Infrastructure Comm.*, 11th Dist. No. 2015-P-0081, 2016-Ohio-7152, ¶ 21, 23. OTIC has appealed the decision to the Supreme Court of Ohio, and that court has yet to rule on the memorandum in support of jurisdiction. *Spellman Outdoor Advertising Servs., LLC v. Ohio Turnpike & Infrastructure Comm.,* S.Ct. No. 2016-1686 (Nov. 14, 2016 Notice of Appeal.)

{¶ 18} Spellman filed an appeal of ODOT's decision with the Franklin County Court of Common Pleas on December 1, 2015, pursuant to R.C. 119.12. Spellman filed a motion to stay proceedings pending the resolution of OTIC's appeal in the Portage County action, but the court of common pleas denied the motion to stay. On April 5, 2016, the court of common pleas affirmed the November 16, 2015 ODOT order and held that ODOT did not err in denying Spellman's permit applications.

## II. ASSIGNMENTS OF ERROR

{¶ 19} Spellman timely appealed to this court assigning the following as error.

> Assignment of Error No. 1: As a matter of law, the statutes used to deny the Permits do not give the Director of ODOT the authority to deny the Permits under these circumstances, and the Order of the Director of ODOT was not in accordance with law.
>
> Assignment of Error No. 2: ODOT's application of the statutes under color of the state to deny the Permits to Spellman was unconstitutional.

Assignment of Error No. 3: The Common Pleas Court abused its discretion by basing its Decision and Entry on Findings of Fact that were not made by ODOT.

## III. STANDARD OF REVIEW

{¶ 20} The court of common pleas is charged with considering the entire record in an administrative appeal pursuant to R.C. 119.12 in order to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine whether the common pleas court abused its discretion in review of the agency order. *Id.*; *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). However, the appellate court has plenary review of purely legal questions. *Univ. Hosp., Univ. of Cincinnati College Of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339 (1992), paragraph one of the syllabus; *Big Bob's Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist).

## IV. ANALYSIS

{¶ 21} In its first assignment of error, Spellman asserts that, as a matter of law, ODOT lacked statutory authority to deny the permits. Spellman argues that R.C. 5516.10 does not require site control, and it does not allow ODOT to deny permits based upon a third party's allegation of lack of site control, as was done here with OTIC. Rather, R.C. 5516.10 lists eight grounds for denial of permits, and none of those eight grounds for denial apply to the current situation. Spellman argues that ODOT's statutory authority to deny permit applications is narrow and specific, and that ODOT exceeded the bounds of the statute in denying the permits in this case.

{¶ 22} Spellman further argues that when substantive real property rights are at issue, as they are here concerning the applicability of a deed restriction, ODOT does not have the authority to decide such a dispute, and the appropriate course of action is to file

an action in the common pleas court.  OTIC has done that in other cases rather than seeking to enforce a deed restriction through an administrative proceeding.  *See, e.g., Ohio Turnpike Comm. v. TTR Media*, 9th Dist. No. 99CA007470 (Nov. 22, 2000); *Ohio Turnpike Comm. v. Spellman Outdoor Advertising Servs., LLC*, 6th Dist. No. E-09-038, 2010-Ohio-1705.

{¶ 23} ODOT interprets its grant of statutory power under R.C. 5516.10(B)(10) to require an applicant to demonstrate legal control or "site control" over the property on which the applicant has applied to place an advertising device.  ODOT contends that its practice is to deny permit applications that do not make an acknowledgment of site control that is reliable.  (Brief of Appellee ODOT at 9.)  In this case, OTIC alerted ODOT to the existence of the Mullet Restriction.  OTIC alleged the Mullet Restriction prohibited the placing of billboards on the Spellman Property.  Thus, despite Spellman complying with the letter of R.C. 5516.10(B)(1) and providing an acknowledgment of site control, ODOT took the position that it was entitled to look beyond the acknowledgment and deny the permits based on recognition of an unresolved question concerning site control.

{¶ 24} As an administrative agency, the power ODOT has to regulate outdoor advertising is limited by the authority given to it by statute.  *Ohio Fresh Eggs, LLC v. Boggs*, 183 Ohio App.3d 511, 2009-Ohio-3551, ¶ 10, (10th Dist.) ("An administrative agency has no authority beyond the authority given to it by statute.").  The authority conferred by the General Assembly cannot be extended by an administrative agency.  *Id.* at ¶ 28, citing *Burger Brewing Co. v. Thomas*, 42 Ohio St.2d 377, 379 (1975).  "A grant of such statutory power may be express or implied, but the implied power is limited to that which is reasonably necessary to make the express power effective."  *Ohio Fresh Eggs* at ¶ 28; *State ex rel. A. Bentley & Sons Co. v. Pierce*, 96 Ohio St. 44, 47 (1917).

{¶ 25} Here, R.C. 5516.10 confers authority on ODOT to issue, renew, and cancel advertising permits, and R.C. 5516.12 gives authority to disapprove, cancel, or revoke requested or existing permits and order the removal of signs under certain circumstances.  ODOT's express statutory authority allows ODOT to require a signed acknowledgment that the applicant has the right to occupy the land at the subject location, and to require a notarized statement that the applicant has not knowingly provided materially false, misleading, or inaccurate information. R.C. 5516.10(B)(1) and (2).  In addition, the statute

gives ODOT the express authority to disapprove permit applications under eight specific conditions such as the advertising device being a traffic or safety hazard. R.C. 5516.10(B)(4)(a-h).

{¶ 26} However, nothing in these statutes states that ODOT can deny a permit because a third party, in this case OTIC, has alleged what it refers to as a lack of site control. The statute also does not state that an application may be denied if ODOT believes that there is a lack of possession or control. The basis for denial in this case was that the administrator of the Office of Contract Sales "felt" that the Mullet Restriction created a lack of site control. (Tr. at 235.)

{¶ 27} The statutes do provide for cancellation or revocation of permits if "the application for the permit contains materially false, misleading, or inaccurate information." R.C. 5516.12(A). Thus, if ODOT learns that Spellman did not have "lawful possession or control of the proposed location of the advertising device" due to a deed restriction that had been deemed enforceable by a court of competent jurisdiction, it has the authority, under R.C. 5516.12, to cancel or revoke the permit and order the removal of the advertising device. R.C. 5516.10(B)(1). But nothing in the statutes gives ODOT the authority to determine whether possession or control legally exists. "ODOT's authority does not extend or include the power to decide substantive real property rights." *Spellman Outdoor Advertising Servs.,* 2016-Ohio-7152 at ¶ 23. A court of common pleas is the appropriate tribunal to ascertain legal title to land. *Id.* at ¶ 21; *Sturgell v. Bott*, 12th Dist. No. CA90-09-014 (May 20, 1991); *see* R.C. 5303.01 (action to quiet title).

{¶ 28} ODOT appeared to recognize this limitation on its jurisdiction and authority because even after allowing OTIC to intervene to present evidence about the validity of the Mullet Restriction and whether it applied to the Spellman property, the hearing officer declined to resolve the issue.

> All the parties present spent a significant amount of time during pre-hearing briefs, hearing testimony and closing arguments addressing the validity of the Mullet Restriction as against Spellman, specifically: Was it validly recorded? Is it valid against Spellman? Was there constructive notice? Was there actual notice? Was Spellman's search thorough enough? Which case law is dispositive?

This Hearing Officer finds that it need not reach the *conclusory* answer to those questions to resolve the issue at hand. The issue before this Hearing Officer is much more straightforward: whether ODOT abused its discretion in denying the permit applications in question.

(Emphasis sic.)  (Hearing Officer's Report and Recommendation at 3-4.)

{¶ 29} Had the hearing officer attempted to resolve the issue of the validity of the Mullet Restriction, she risked running afoul of the decision in the quiet title and declaratory action in Portage County that was eventually resolved in Spellman's favor. *Spellman Outdoor Advertising Servs.,* 2016-Ohio-7152 at ¶ 21, 23. This illustrates the potential for conflicting decisions if ODOT goes beyond its statutory grant of authority and attempts to decide substantive real property rights and determine "site control."

{¶ 30} Additionally, OTIC has acknowledged in court filings that ODOT's billboard permit functions have nothing to do with enforcement of independent deed restrictions. As OTIC argued in a similar case, "ODOT's billboard permit functions pertain only to the enforcement of height and distance requirements mandated by Federal law. Its duties have nothing to do with the enforcement of independent deed restrictions." (Tr. Vol. II at 69.)

{¶ 31} The statutory scheme set up by the General Assembly to regulate outdoor advertising vests ODOT with limited discretion and jurisdiction to determine whether an applicant has complied with the procedures outlined in R.C. 5516.10. This is an administrative function that is separate from determining validity of independent deed restrictions. Ohio courts, not ODOT, have jurisdiction to determine substantive real property questions concerning whether a particular deed restriction encumbers a particular piece of property. *See* R.C. 5303.01 (action to quiet title). Nor does the final sentence of R.C. 5516.10(B)(1) authorize ODOT to adjudicate site control as OTIC has argued. The final sentence of that provision states as follows:

If legal use of the location is terminated at any time during the permit period, the permit is subject to cancellation pursuant to section 5516.12 of the Revised Code.

{¶ 32} This is not a grant of authority to terminate legal use or to determine substantive real property issues; instead, the statute gives ODOT the power to cancel a

permit if there is a loss of legal use. *See, e.g., TTR Media* at 2 (ODOT granted permit based on inaccurate representation and subsequently revoked the permit in order to enforce a restrictive covenant). In this case, had OTIC successfully established in the quiet title action that the Mullet Restriction was enforceable with respect to the Spellman Property, ODOT could have revoked the permits under R.C. 5516.10(B)(1).

{¶ 33} Under our less expansive interpretation of the statutes, situations like the present case are avoided where an administrative proceeding is going forward with OTIC intervening while at the same time the substantive property rights are being litigated against OTIC in a court of common pleas.

{¶ 34} ODOT and the court of common pleas applied a statutory interpretation that is not supported by the express language conferred by the General Assembly in R.C. 5516.10 and 5516.12. As a matter of law, ODOT lacked statutory authority to deny the permits based on the alleged lack of possession and control asserted by OTIC. Therefore, it was an abuse of discretion for the court of common pleas to affirm the ODOT order based on an alleged ambiguity regarding the validity of the Mullet Restriction.

{¶ 35} The first assignment of error is sustained.

{¶ 36} Having resolved the first assignment of error in favor of Spellman, we need not determine the constitutional question in the second assignment of error or whether the common pleas court based its decision on findings of fact that were not made by ODOT as set forth in the third assignment of error.

## V. CONCLUSION

{¶ 37} Based on the foregoing, the first assignment of error is sustained, and the second and third assignments of error are overruled and rendered as moot.

{¶ 38} We reverse the judgment of the Franklin County Court of Common Pleas and direct the court of common pleas to enter an order directing ODOT to reevaluate the permit applications in light of this decision and the decision of the Eleventh District Court of Appeals in *Spellman Outdoor Advertising Servs.,* 2016-Ohio-7152.

*Judgment reversed; cause remanded*
*with instructions.*

BROWN AND DORRIAN JJ., concur.